IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'26 AUG 14 AM8:14

| | | |
|---|---|---|
| JOSEPH ROSA-GRULLON, | ) | |
| Plaintiff, | ) | Civil Action No. 24-cv-3156-LKG |
| v. | ) | Dated: August 13, 2026 |
| LIEUTENANT HESELBACH, et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Self-represented plaintiff Joseph Rosa-Grullon, incarcerated at North Branch Correctional Institution ("NBCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. The operative pleadings are the complaint and supplement to the complaint. ECF No. 1, ECF No. 9. The action is pending against Defendants Lieutenant Ryan Heselbach, Sgt. Troy Crawford, Officer Raley, Officer Brown, and Case Manager Shannon McKenzie.[1] ECF No. 11. Rosa-Grullon seeks monetary damages and a declaratory judgment.[2] ECF No. 1 at 8, 10; ECF No. 9 at 5.

Defendants have filed a Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 27. Rosa-Grullon was advised of his right to file an opposition response to Defendant's motion and of the consequences for failing to do so. ECF No. 28. To date, Rosa-Grullon has not filed a response. The matter is now ripe and ready for review. For the reasons discussed below,

[1] Defendants correct the names of Defendant Hazelback to Ryan Heselbach, and Defendant Officer Riley to Officer Raley. ECF No. 27 at 1 n. 1, 2. The Clerk will be directed to correct the names on the docket. Service has not been effectuated for Defendant Officer Brown, who is no longer employed with the Department of Public Safety and Correctional Services. See ECF No. 12 at 2, ECF No. 15, ECF No. 25.

[2] As discussed in further detail below, Rosa-Grullon states in the Introduction to his Complaint that he is also seeking "Relief Under Injunction" but the Court finds no allegations in the Complaint or Supplement to the Complaint that pertain to injunctive relief. ECF No. 1 at 1, 10; ECF No. 5.

Defendants' Motion will be denied. Rosa-Grullon's Motion for Appointment of Counsel will be granted. ECF No. 21.

## I. Background

### A. Complaint and Supplement

In his Complaint, Rosa-Grullon alleges that he "recently identified himself as bisexual" and since doing so has received "numerous threats" against his life. ECF No. 1 at 3. On September 18, 2024, Rosa-Grullon had his monthly administrative segregation review at NBCI. ECF No. 1 at 3; ECF No. 9 at 4. He expressed to the team, including Case Manger McKenzie, that his "life/safety is in eminent danger" if he is returned to population due to numerous threats from gang members who sent him notes threating violence. ECF No. 1 at 3; ECF No. 9 at 4. McKenzie failed to investigate his claims. ECF No. 9 at 4. The team then approved his return to general population to which he was transferred on September 21, 2024. ECF No. 3-4; ECF No. 9 at 4.

On arrival at the general population housing unit, Rosa-Grullon immediately notified Tier Officer Raley that he will be attacked, assaulted, and/or stabbed and is unsafe on the tier. ECF 1 at 4. Raley advised Rosa-Grullon that he could stay on the tier in his assigned cell or refuse housing and be placed in disciplinary segregation. *Id.* To avoid a disciplinary matter, Rosa-Grullon chose to stay in the general population housing unit. *Id.*

On September 22, 2024, Rosa-Grullon advised Tier Officer Brown that he needed to speak with the officer in charge, either a Sergeant or Lieutenant. *Id.* at 4. Officer Brown advised Rosa-Grullon that there was "nothing" anyone could do about his safety and security concerns. *Id.* On September 23, 2024, Rosa-Grullon against requested to speak to either the Lieutenant, Sergeant, or other office in charge. *Id.* Sgt. Crawford then came to Rosa-Grullon's cell and escorted him to a strip search cage to discuss his situation. *Id.* Rosa-Grullon presented officers with documents, paperwork, and threatening kites he had received from other inmates. *Id.* at 5. Sgt. Crawford notified him that these items were photographed and documented and then gave him a choice to return to his assigned cell or refuse housing and be placed in disciplinary segregation. *Id.* Lt. Heselbach was aware of the threats he was receiving and gave him a direct order to return to his cell or receive disciplinary action. *Id.*; ECF No. 1-1 at 2. Rosa-Grullon returned to his assigned cell. *Id.* On September 28, 2024, Rosa-Grullon was "brutally assaulted and attacked" by another inmate when he was let out of his cell for a shower. ECF No. 1 at 5.

He was treated for facial injuries and eventually placed on administrative segregation. ECF No. 1-1 at 2.

On October 10, 2024, Rosa-Grullon filed a Request for Administrative Remedy ("ARP") complaining of officers' failure to protect him from assault on September 28, 2026. ECF No. 1-1. On October 15, 2024, the ARP was procedurally dismissed on grounds that the ARP process may not be used to seek relief regarding case management recommendations and decisions, citing the Code of Maryland Regulations ("COMAR") 12.02.28.4.B(1). *Id.* at 1.

**B. Defendants' Response**

Defendants assert that the Complaint and Supplement to the Complaint should be dismissed because Rosa-Grullon failed to exhaust his administrative remedies before initiating this case. ECF No. 27-1 at 5-9. Defendants also assert that claims against Lt. Heselbach and Sgt. Crawford should be dismissed because Rosa-Grullon fails to state a claim of supervisory liability (*id.* at 9); claims against Defendants in their official capacity should be dismissed (*id.* at 10-11); and Rosa-Grullon is not entitled to injunctive or declaratory relief. *Id.* at 11-13.

Kristina M. Donnelly, Special Assistant to the Director of Patuxent Institution with access to ARP appeals to the Commissioner, attests that no ARP appeals from Rosa-Grullon were received from 2024 through December 2, 2025. ECF No. 27-2 at 1-2. Robin Woolford, Deputy Director of the Incarcerated Individual Grievance Office ("IIGO"), attests that a review of records demonstrates that Rosa-Grullon did not file any grievances with the IIGO at any time up until December 2, 2025. *Id.* at 3-4.

Defendants provide copies of two ARPS filed by Rosa-Grullon. ECF No. 27-3. The first ARP, dated September 23, 2024, complains of the refusal of the administrative segregation review team to keep Rosa-Grullon in administrative segregation and make him choose between disciplinary action and general population. *Id.* at 1-2. The second ARP, dated October 10, 2024, complains of the September 28, 2024 assault. *Id.* at 3-5. Both ARPS were "[d]ismissed for procedural reasons: Final per COMAR 12.02.28.4.B.(1) Inmates may not seek relief through the Administrative Remedy Procedure regarding Case Management recommendations and decisions." *Id.* at 1, 3.

## II. Standard of Review

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner

implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendant filed his Motion as a motion to dismiss, or in the alternative, for summary judgment, Rosa-Grullon was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. To date, Rosa-Grullon has not filed a response to Defendant's Motion. Accordingly, the Court will rule on Rosa-Grullon's claim under the Rule 56(a) standard where appropriate.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Court is mindful, however, that Rosa-Grullon is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. Analysis

### A. Exhaustion

The documentation and declarations submitted show that Rosa-Grullon filed two ARPs. ECF Nos. 1-1; 27-3. Defendants raise the affirmative defense that Rosa-Grullon failed to exhaust his administrative remedies by not appealing the ARPs that were dismissed on procedural grounds.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennett*, 517 F.3d 717, 725, 729 (4th Cir.

2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The ... PLRA amendment made clear that exhaustion is now mandatory.").

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 933 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. 632, 636 (2016). An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725 (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *see also Kaba*, 458 F.3d at 684.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5). If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IIGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).

If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it "without a hearing ...." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IIGO, the hearing is conducted by an administrative law judge with the Maryland Office of

Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10- 209(b)(2), (c); COMAR 12.07.01.10(B).

Here, both of Rosa-Grullon's ARPs were procedurally dismissed on grounds that the ARP process may not be used to seek relief regarding case management recommendations and decisions, citing the Code of Maryland Regulations ("COMAR") 12.02.28.4.B(1). ECF No. 27-3 at 1, 3. Section 12.02.28.04(B)(1) states "[a]n inmate may not use the ARP to resolve a complaint concerning" case management recommendations and decisions.

Although there is clearly no administrative remedy available to resolve case management recommendations and decisions, Defendants nevertheless assert that Rosa-Grullon was required to proceed through the appeals process in order to exhaust administrative remedies and that his failure to do so requires dismissal of the case. ECF No. 27-1 at 5-8. Defendants' argument does not prevail.

Rosa-Grullon's failure to appeal the ARP denials does not demonstrate a lack of exhaustion. This is because the administrative remedy scheme is clearly "unavailable" on case management decisions, as Rosa-Grullon was notified when each ARP was dismissed. *See Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023) (a remedy is not available if "an inmate's only hope for relief is that officials act contrary to statute and regulation."); *Matthews v. Dep't of Pub. Safety & Corr. Services*, No. CV SAG-23-01975, 2025 WL 3039264, at *8 (D. Md. Oct. 31, 2025) ("because no administrative remedy is available for matters that constitute case management decisions, Defendants have not carried their burden to establish . . . failure to exhaust"). Rosa-Grullon's ARPs were determined to pertain to case management decisions for which the ARP process was unavailable. He did not fail to exhaust administrative remedies and Defendants' motion for summary judgment on this defense is denied.

**B. Defendants' Remaining Arguments**

Defendants assert that Rosa-Grullon is not entitled to injunctive or declaratory relief. ECF No. 27-1 at 11-13. Rosa-Grullon states that he is suing for damages and "Relief Under

Injunction" but provides no pertinent information or request for specific injunctive relief. ECF No. 1 at 1, ECF No. 9 at 6. The Court need not assess any request for injunctive relief, as one has not been plausibly pled.

As to declaratory judgment, Rosa-Grullon states that he is seeking a declaration that Defendants have violated his rights. ECF No. 1 at 8. This is not a viable request for declaratory judgment because Rosa-Grullon is not seeking a remedy for future injuries, rather he is solely seeking a favorable decision on his claim of past injury. *See Wells v. Johnson*, 140 F.4th 289, 303 (4th Cir. 2025) ("It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties." (internal quotation marks omitted)). Rosa-Grullon's claims are proceeding and whether Defendants violated his rights for past action will be determined at some future point. His request for declaratory relief is denied.

Defendants also assert that Rosa-Grullon has not stated a claim of supervisory liability against either Lt. Heselbach or Sgt. Crawford. ECF No. 27-1 at 9. In a suit arising under 42 U.S.C. § 1983, liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). The Court does not construe Rosa-Grullon's claims against these Defendants as sounding in supervisory liability. Rosa-Grullon alleges that Heselbach and Crawford each took action and made determinations denying him administrative segregation and ordering him to return to his general population cell or face disciplinary charges. *See* ECF No. 7 at 2 citing ECF No. 1 at 4-5; ECF No. 1-1 at 2. Rosa-Grullon has adequately alleged that both Heselbach and Crawford took individual action to violate his rights. Rosa-Grullon's claims against Heselbach and Crawford in their individual capacity may proceed.

Finally, Defendants assert they are entitled to immunity under the Eleventh Amendment. ECF No. 27-1 at 10. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Defendants are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Court has determined that Rosa-Grullon's claims for equitable relief may not proceed, and claims are proceeding against Defendants only in their individual capacity for damages. The Eleventh Amendment is inapplicable to the remaining claims.

**IV. Motion to Appoint Counsel**

Rosa-Grullon has filed a Motion to Appoint counsel stating his need to present evidence, cross examine witnesses, and lack of litigation knowledge. ECF No. 21. [D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted).

The Court determines that Rosa-Grullon has presented exceptional circumstances. He is presently incarcerated and has demonstrated limited legal and procedural knowledge. The case will need discovery pertinent to the issues presented as related to numerous defendants. Based on Rosa-Grullon's filings to date, the nature of the claims, and the need for discovery, the Court determines that exceptional circumstances exist that warrant the appointment of an attorney to represent Rosa-Grullon under 28 U.S.C. § 1915(e)(1). Rosa-Grullon's Motion to Appoint Counsel will be granted.

**V. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment is denied in all respects. Rosa-Grullon's Motion to Appoint Counsel will be granted and counsel may complete service on remaining Defendant Officer Brown. A separate Order follows.

August 13, 2026
Date

LYDIA KAY GRIGGSBY
United States District Judge